UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRIAN BRESNAHAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-CV-00058 JCH |
| | ) |
| CITY OF SAINT PETERS, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' City of St. Peters ("City"), Chief of Police Rick Struttmann ("Struttmann"), and City Administrator Russ Batzel ("Batzel") (collectively "Defendants") motion to dismiss Plaintiff Brian Bresnahan's ("Bresnahan" or "Plaintiff"), complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Doc. [11]. Plaintiff responded to the motion, Defendants filed a reply, and the matter is fully briefed and ripe for disposition. For the reasons set forth below, Defendants' motion will be granted.

**I.    Factual and Procedural Background**

Taken as true for the purpose of this motion, the facts alleged in the amended complaint are as follows. Plaintiff, a police officer formerly employed by the City, alleges that Defendants retaliated against him for exercising his First Amendment rights. The claim arises out of events that occurred in the wake of widespread protests following the death of George Floyd at the hands of a Minneapolis police officer in May of 2020. During this time, Plaintiff and his fellow police officers established a text messaging group to provide officers with up-to-date information regarding the protests that were occurring in and around the City.

On June 9, 2020, Plaintiff shared with the text group a message that included a video clip from the television show "Paradise PD." All members of the text group were fellow police officers with the City's Police Department. After Plaintiff sent the message, one of the other officers in the text group "voiced displeasure" about the message and video. The next morning, on June 10, 2020, Plaintiff was called in to meet with Chief Struttmann. During the meeting, Struttmann "berated" Plaintiff for making the comments in the message, and told Plaintiff that if he resigned there would be no internal investigation into the matter. Plaintiff alleges that Struttmann told him that if he did not resign, there would be an investigation, and that Struttmann would recommend that Plaintiff be terminated by Defendant Batzel. Plaintiff resigned during this meeting with Struttmann.

Plaintiff initially filed this action in the Circuit Court for St. Charles County, Missouri, on December 11, 2020. On January 14, 2021, Defendants removed the suit to this Court.

On the basis of the foregoing allegations, Plaintiff asserts that Defendants retaliated against him for exercising his rights to free speech under the First Amendment in violation of 42 U.S.C. § 1983. Plaintiff also asserts that the allegedly retaliatory actions violated his rights to free speech under the Missouri Constitution.

Defendants filed the instant motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

**II.     Legal Standards**

Defendants have moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises . . . thereby sparing litigants the burden of unnecessary pretrial and trial activity."

2

*Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).  A pleading is deficient and may be dismissed under Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).  The complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory," and "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [each element]." *Twombly*, 550 U.S. at 562.  The reviewing court must accept the plaintiff's factual allegations as true and construe them in the plaintiff's favor, but it is not required to accept the legal conclusions that plaintiff draws from the facts alleged.  *Iqbal*, 556 U.S. at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012).  A court must "draw on its judicial experience and common sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.

3

*Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

### III. Discussion

#### A. Section 1983 Claim: Retaliation for the Exercise of First Amendment Rights

Plaintiff asserts that Defendants, in retaliation for Plaintiff's exercise of his rights under the First Amendment, violated those rights by constructively terminating him. Defendants move to dismiss, asserting that Plaintiff's communication in the group text did not address a matter of public concern and is not therefore protected speech under the First Amendment. Defendants further assert that, because Plaintiff has failed to allege facts establishing that Defendants' conduct violated any constitutional right, they are entitled to qualified immunity

To establish a prima facie case of retaliation for the exercise of his First Amendment rights, a plaintiff must prove that (1) his speech was protected by the First Amendment; (2) the governmental employer discharged him from employment; and (3) that the protected speech was a "substantial or motivating" factor in the defendant's decision to discharge the plaintiff. *Rynders v. Williams,* 650 F.3d 1188, 1194 (8th Cir.2011); *Davison v. City of Minneapolis, Minn.,* 490 F.3d 648, 654–55 (8th Cir.2007).

The First Amendment guarantees every citizen a right to engage in free speech, without governmental restriction. *See Wickersham v. City of Columbia,* 481 F.3d 591, 597 (8th Cir. 2007). A public employer may not penalize an employee for the exercise of his constitutionally protected right to freedom of speech, because "public employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti v. Ceballos,* 547 U.S. 410, 417, (2006); *see also McGee v. Pub. Water Supply, Dist. No. 2 of Jefferson Cnty., Mo.,* 471 F.3d 918, 919 (8th Cir. 2006) (citation omitted). Rather, "[a] public employee retains a degree of First

4

Amendment protection when he speaks as a citizen addressing matters of public concern." *Bonn v. City of Omaha,* 623 F.3d 587, 592 (8th Cir. 2010).

The court must therefore determine whether the employee's speech may be characterized as speech on a "matter of public concern." *Garcetti,* 547 U.S. at 417 (citations omitted). "[W]hile the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.' " *Id.,* 547 U.S. at 420–21 (quoting *Connick v. Myers,* 461 U.S. 138, 154 (1983)). It is therefore well established that speech which "deal[s] with personnel matters" generally will not be deemed to address matters of public concern. *Belk v. City of Eldon,* 228 F.3d 872, 879 (8th Cir.2000). "The inquiry into the protected status of speech is one of law, not fact." *Connick,* 461 U.S. at 148 n. 7.

Whether a public employee's speech "addresses a matter of public concern" is determined by "the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48. Heightened public interest in the issue is not dispositive on its own. *See Domina v. Van Pelt*, 235 F.3d 1091, 1098 (8th Cir. 2000). Instead, courts have considered such factors as (1) to whom the public employee spoke, *see Connick*, 461 U.S. at 148, (2) whether the statement was made pursuant to the employee's duties or up the chain of command, *see Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008), and (3) whether private interests have motivated the speaker, *see Anzalduaa v. Northeast Ambulance and Fire Protection Dist*., 793 F.3d 822, 833 (8th Cir. 2015). When applying this test, courts may find that a public employee's speech relates both to his private interests and matters of public concern. In such circumstances, "the speech is protected if it is primarily motivated by public concern." *Id*. at 833; *McCullough v. Univ. of Ark.for Medical Sciences*, 559 F.3d. 855, 860, 866 (8th Cir. 2009).

5

Here, Defendants argue, and the Court agrees, that Plaintiff's complaint does not contain factual allegations sufficient to allow the Court to conduct the required inquiry into whether the speech at issue was a matter of public concern, and therefore, the Court is not in a position to determine whether the speech was protected speech within the meaning of the First Amendment. Plaintiff alleges that the message he sent "was relevant to and critical of ongoing protests that stemmed from the Black Lives Matter movement." Doc. [7], ¶ 7. However, entirely absent from the complaint are any allegations regarding what the video showed, or what, if anything, Plaintiff said about the contents of the video or about the protests. In his response in opposition to Defendants' motion to dismiss, Plaintiff seems to assume, and expects the Court to likewise assume, that his message addressed a matter of public concern simply because it had something to do with "public unrest [that] was created by a widespread and divisive issue." *See* Doc. 13 at 8. However, as noted *supra*, heightened public interest in an issue, on its own, is not dispositive of the question of whether the speech addressed a matter of public concern. *See Domina*, 235 F.3d at 1098.

Due to the threadbare nature of Plaintiff's description of the allegedly protected speech, the Court does not know the "content, form, and context of [the relevant] statement," and is therefore unable to determine whether the speech was a matter of public concern. *Connick*, 461 U.S. at 147-48. Accordingly, Plaintiff has not established that the speech was protected by the First Amendment such that his termination violated his constitutional rights, and he has failed to state a claim under § 1983.

### B. Personal Capacity Claims Against Defendant Batzel

Defendants move to dismiss Plaintiff's claims as brought against Defendant Batzel because Plaintiff does not include in his complaint any allegations that Batzel had any

6

knowledge of Plaintiff's text message, nor any allegations that Batzel knew of or participated in Plaintiff's meeting with Struttman that ended with Plaintiff's resignation. Batzel argues that Plaintiff's § 1983 claims against him are based on respondeat superior liability and do not state a claim because they do not allege that Batzel was aware of his subordinate's alleged unlawful conduct or that he tacitly approved the conduct.

Government officials may not be held liable for unconstitutional conduct under a theory of respondeat superior. *Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018). Liability in a § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)); *see also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

Here, Plaintiff's complaint mentions Defendant Batzel only two times. In Paragraph 4, Plaintiff merely states Batzel's position as City Administrator of St. Peters. Doc. [7], ¶ 4. Later, in Paragraph 13, Plaintiff alleges that Defendant Struttmann told Plaintiff that he "would ultimately recommend Plaintiff be terminated and that Defendant Russ Batzel would terminate Plaintiff's employment." *Id*., ¶ 7. Notably absent is any allegation that Batzel was aware of Plaintiff's text message, or that Batzel participated in, or even knew about, Plaintiff's meeting

7

with Struttmann. Indeed, the complaint does not include any allegations that Batzel said or did anything between the time when Plaintiff sent his text and when he submitted his resignation.

Plaintiff does not allege any facts that could allow the Court to draw a reasonable inference that Batzel personally engaged in retaliatory conduct in violation of his First Amendment rights. Because Plaintiff has established no causal connection between Defendant Batzel and the alleged constitutional violation, the Court will dismiss Plaintiff's claims against Batzel for this reason.

## C. *Monell* Claim Against the City

Defendants move to dismiss Plaintiff's §1983 claim against the City, arguing that he fails adequately to allege municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). "A political subdivision may not generally be held vicariously liable under section 1983 for the unconstitutional acts of its employees." *Rumer v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). For § 1983 liability to attach to the City, Plaintiff must show that a constitutional violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). In the motion to dismiss, the City argues that Plaintiff's factual allegations are insufficient to establish any of these bases for liability.

In the context of § 1983 municipal liability, the term "policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016) (internal quotation marks and citation omitted). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the

force of law." *Board of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997). To establish liability based on "custom," Bresnahan must demonstrate: 1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and 3) that he was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation. *Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Bresnahan need not identify a specific unconstitutional policy to survive the City's motion to dismiss, *see Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004), but he must, at the least, allege facts from which one "could begin to draw an inference" that the conduct complained of resulted from the existence of an unconstitutional policy or custom. *Id.* Here, Plaintiff has not included in his complaint any language or facts from which an inference could be drawn that St. Peters had a policy or custom that was the moving force behind the alleged constitutional violation, and his § 1983 claim against the City must fail.

**D. Official Capacity Claims Against Defendants Struttmann and Batzel**

Plaintiff also brings claims against Struttmann and Batzel in their official capacities. An official capacity claim against an individual is actually a claim "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). In order to prevail on such an official capacity claim, a plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Here, as discussed *supra*, Plaintiff has not established the City's liability for the allegedly unconstitutional

conduct, and therefore his official capacity claims against Defendants Struttmann and Batzel will be dismissed.

### E.  State Constitutional Claim

Plaintiff also asserts that Defendants' alleged retaliation against him violated his right to free speech under Article I, Section 8, of Missouri's Constitution.  Defendants argue that Plaintiff's claims arising under the Missouri Constitution are not cognizable and must be dismissed because there is no private cause of action available to Plaintiff under this Section of the Missouri Constitution.  Plaintiff did not respond to Defendants' argument regarding the cognizability of this claim.

The right to free speech under Article I, Section 8 of the Missouri Constitution tracks the corresponding rights under the First Amendment of the United States Constitution.  *See Am. Fed'n of Teachers v. Ledbetter*, 387 S.W.3d 360, 364 (Mo. 2012).  As such, under the Missouri Constitution "[p]ublic employee speech is protected from retaliation, in certain circumstances, if the speech addresses a matter of public concern." *Bailey v. Dep't of Elementary & Secondary Educ.*, 451 F.3d 514, 518 (8th Cir. 2006).  *See also Mogard v. City of Milbank*, 932 F.3d 1184, 1189 (8th Cir. 2019) ("A public employee's speech is protected under the First Amendment if he spoke as a citizen on a matter of public concern....") (internal quotation marks omitted).

The Missouri General Assembly has not enacted any law similar to 42 U.S.C. § 1983 that gives citizens a private cause of action to sue state actors for monetary damages related to violations of the Missouri Constitution.  *Smith v. Sachse*, No. 4:17-CV-2593 SPM, 2018 WL 3159081, at *7 (E.D. Mo. June 28, 2018). *See also Moody v. Hicks*, 956 S.W.2d 398, 402 (Mo. Ct. App. 1997) ("[N]o Missouri precedent exists permitting suits for monetary damages by private individuals resulting from violations of the Missouri Constitution."); *Collins-Camden*

*P'ship, L.P. v. Cty. of Jefferson*, 425 S.W.3d 210, 214 (Mo. Ct. App. 2014) ("No Missouri precedent exists permitting suits for monetary damages by private individuals resulting from violations of the Missouri Constitution.").

Plaintiff seeks injunctive relief against the City in the form of reinstatement of his employment. However, Plaintiff has not disclaimed monetary damages in relation to his claim against Defendants under the Missouri Constitution, and, as explained above, any such claim must fail. As a result, the Court will dismiss with prejudice Plaintiff's Missouri constitutional claims to the extent he may seek monetary damages in connection with such claims. To the extent that Plaintiff seeks non-monetary damages, his claim for retaliation in violation of his rights to freedom of speech under the Missouri Constitution fails for the same reason that his identical claim under the First Amendment of the United States Constitution failed. Because the Court is unable to determine whether his speech addressed a matter of public concern, Plaintiff does not state a claim for violation of his rights to freedom of speech under the Missouri Constitution.

### IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that, pursuant to Fed. R. Civ. P. 12(b)(6), Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. [11]) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff, should he choose to do so, is granted leave to file an Amended Complaint addressing the deficiencies identified herein by **August 11, 2021**. Failure to file a timely Amended Complaint with the Court may result in the dismissal of this case. Dated this 27th day of July, 2021.

/s/Jean C. Hamilton  
JEAN C. HAMILTON  
UNITED STATES DISTRICT JUDGE