## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| BRIAN BRESNAHAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-CV-00058 JCH |
| | ) |
| CITY OF SAINT PETERS, et al., | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM AND ORDER

This matter is before the Court on Defendants' City of St. Peters ("City"), Chief of Police Rick Struttmann ("Struttmann"), and City Administrator Russ Batzel ("Batzel") (collectively "Defendants") motion to dismiss Plaintiff Brian Bresnahan's ("Bresnahan" or "Plaintiff") First Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Doc. [30]. Plaintiff responded to the motion, Defendants filed a reply, and the matter is fully briefed and ripe for disposition.  For the reasons set forth below, Defendants' motion will be granted.

**I.  Factual and Procedural Background**

Taken as true for the purpose of this motion, the facts alleged in the amended complaint are as follows.  Plaintiff, a police officer formerly employed by the City, alleges that Defendants retaliated against him for exercising his First Amendment rights.  The claim arises out of events that occurred in the wake of widespread protests related to the Black Lives Matter movement. During this time, Plaintiff and his fellow police officers established a "private and closed" text messaging group to provide officers with up-to-date information regarding the protests that were occurring in and around the City.   Amd. Complaint, ¶ 9.

On June 9, 2020, Plaintiff shared with the text group a message that included a video clip from the television show "Paradise PD" which depicted "a black police officer [who] accidentally shoots himself and the media headlines the issue as 'another innocent black man shot by a cop.'" *Id.* ¶ 7. All members of the text group were fellow police officers with the City's Police Department. *Id.* ¶ 9. After Plaintiff sent the message, one of the other officers in the text group "voiced displeasure" about the message and video. *Id.* ¶ 11. The next morning, on June 10, 2020, Plaintiff was called in to meet with Chief Struttmann. *Id.* ¶ 14. During the meeting, Struttmann "berated" Plaintiff for circulating the video, and told Plaintiff that if he resigned there would be no internal investigation into the matter. *Id.* ¶ 15. Plaintiff alleges that Struttmann told him that if he did not resign, there would be an investigation, and that Struttmann would recommend that Plaintiff be terminated by Defendant Batzel. *Id.* Plaintiff resigned during this meeting with Struttmann. *Id.* ¶ 17.

On the basis of the foregoing allegations, Plaintiff asserts that Defendants retaliated against him for exercising his rights to free speech under the First Amendment in violation of 42 U.S.C. § 1983.

Plaintiff initially filed this action in the Circuit Court for St. Charles County, Missouri, on December 11, 2020. On January 14, 2021, Defendants removed the suit to this Court and filed a motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court granted that motion (Doc. [27]) but allowed Plaintiff to file an amended complaint. Plaintiff did so on August 11, 2021, and the instant motion to dismiss soon followed, in which Defendants argue that Plaintiff still fails to allege facts sufficient to establish that Defendants' conduct violated his First

Amendment rights. Defendant Officers Struttmann and Batzel additionally argue that they are entitled to qualified immunity[1] on Plaintiff's claim.

## II.     Legal Standards

Defendants have moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises . . . thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). A pleading is deficient and may be dismissed under Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[1] "Qualified immunity shields officials from civil liability in § 1983 actions when their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Morgan v. Robinson,* 920 F.3d 521, 523 (8th Cir. 2019) (en banc) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)). "Qualified immunity analysis requires a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Id.* (quoting *Nord v. Walsh Cnty.,* 757 F.3d 734, 738 (8th Cir. 2014)). "Unless both of these questions are answered affirmatively, an appellant is entitled to qualified immunity." *Id.* (quoting *Nord,* 757 F.3d at 738).

*Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory," and "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [each element]." *Twombly*, 550 U.S. at 562. The reviewing court must accept the plaintiff's factual allegations as true and construe them in the plaintiff's favor, but it is not required to accept the legal conclusions that plaintiff draws from the facts alleged. *Iqbal*, 556 U.S. at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). A court must "draw on its judicial experience and common sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

**III.   Discussion**

Plaintiff asserts that Defendants, in retaliation for Plaintiff's exercise of his rights under the First Amendment, violated those rights by constructively terminating him. Defendants move to dismiss, asserting that Plaintiff's communication in the group text did not address a matter of public concern and is not therefore protected speech under the First Amendment. Defendants Struttmann and Batzel further assert that, because Plaintiff has failed to allege facts establishing Defendants' conduct violated any constitutional right, they are entitled to qualified immunity. Finally, the City argues that Plaintiff's claims against it must dismissed, as there is no underlying constitutional violation by a municipal employee for which the City could be liable.

4

To establish a prima facie case of retaliation for the exercise of his First Amendment rights, a plaintiff must prove that (1) his speech was protected by the First Amendment; (2) the governmental employer discharged him from employment; and (3) that the protected speech was a "substantial or motivating" factor in the defendant's decision to discharge the plaintiff. *Rynders v. Williams,* 650 F.3d 1188, 1194 (8th Cir.2011); *Davison v. City of Minneapolis, Minn.,* 490 F.3d 648, 654–55 (8th Cir.2007).

The First Amendment guarantees every citizen a right to engage in free speech, without governmental restriction. *See Wickersham v. City of Columbia,* 481 F.3d 591, 597 (8th Cir. 2007). A public employer may not penalize an employee for the exercise of his constitutionally protected right to freedom of speech, because "public employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti v. Ceballos,* 547 U.S. 410, 417, (2006); *see also McGee v. Pub. Water Supply, Dist. No. 2 of Jefferson Cnty., Mo.,* 471 F.3d 918, 919 (8th Cir. 2006) (citation omitted). Rather, "[a] public employee retains a degree of First Amendment protection when he speaks as a citizen addressing matters of public concern." *Bonn v. City of Omaha,* 623 F.3d 587, 592 (8th Cir. 2010). Nonetheless, the Supreme Court has recognized that the government "has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *see also City of San Diego v. Roe*, 543 U.S. 77, 80 (2004) (A government employer may impose on its employees rules restricting speech that would "certainly not pass muster" if applied to the public at large); *Connick v. Myers,* 461 U.S. 138, 146 (1983) ("[G]overnment offices could not function if every employment decision became a constitutional matter."). Accordingly, the Supreme Court has formulated a unique test that seeks "to arrive at a balance between the

5

interests of [a public employee], as a citizen, in commenting upon matters of public concern and the interest of the [government], as an employer, in promoting the efficiency of the public services it performs through its employees." *Id*. If the speech in question does not relate to a public concern, however, a court need not perform this balancing test. *Connick*, 461 U.S. at 146.

Therefore, a court must first determine whether an employee's speech may be characterized as speech on a "matter of public concern." *Garcetti,* 547 U.S. at 417 (citations omitted). Whether a public employee's speech "addresses a matter of public concern" is determined by "the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48. Heightened public interest in an issue is not dispositive on the matter. *See Domina v. Van Pelt*, 235 F.3d 1091, 1098 (8th Cir. 2000). Instead, courts have considered such factors as (1) to whom the public employee spoke, *see Connick*, 461 U.S. at 148, (2) whether the statement was made pursuant to the employee's duties or up the chain of command, *see Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008), and (3) whether private interests have motivated the speaker, *see Anzalduaa v. Northeast Ambulance and Fire Protection Dist*., 793 F.3d 822, 833 (8th Cir. 2015).

For example, if the speech at issue was shared only with co-workers, rather than the press or public, that cuts against a determination that it involved a matter of public concern. *Desrochers v. City of San Bernardino*, 572 F.3d 703, 709 (9th Cir. 2009). Additionally, as to context, *i.e*., the employee's motivation for speaking, speech that "seek[s] to bring to light actual or potential wrongdoing or breach of the public trust" weighs in favor of a finding that it was on a matter of public concern. *Id*. at 715. When applying this test, courts may find that a public employee's speech relates both to his private interests and matters of public concern. In such circumstances, "the speech is protected if it is primarily motivated by public concern."

6

*Anzalduaa*, 793 F.3d at 833; *McCullough v. Univ. of Ark.for Medical Sciences*, 559 F.3d. 855, 860, 866 (8th Cir. 2009).

The Court's analysis on this issue, then, requires that it be able to carefully examine the content, form, and context of the speech at issue, which in this case is the video that Plaintiff circulated to his fellow officers. This inquiry into the protected status of speech is purely a question "of law, not fact." *Connick,* 461 U.S. at 148 n. 7. Plaintiff's initial complaint entirely lacked allegations regarding what the video showed, or what, if anything, Plaintiff said about the contents of the video or about the protests. Therefore, the Court dismissed the complaint, as it did not provide the Court with enough information regarding the "content, form, and context" of the speech at issue to evaluate whether it was protected speech within the meaning of the First Amendment.

In Plaintiff's Amended Complaint, he still has not provided the Court with the video clip at issue, nor has he provided a transcript or any fulsome summary or script of the episode that would assist the Court in adequately evaluating the video. He has, however, provided a brief description of the video, in which he states that the video clip depicted a black officer shooting himself, after which "the media headlines the issue as 'another innocent black man shot by a cop.'" Amd. Complaint, ¶ 7. Plaintiff alleges that he sent the video as his "personal opinion" about the ongoing protests, and conclusorily asserts that the clear implication was that he was critical of the Black Lives Matter movement and its protesters. *Id*. ¶ 8

However, the Court's inquiry must focus on what Plaintiff actually said, and "not what [he] says [he] said after the fact." *Desrochers*, 572 F.3d at 711. Notably absent from Plaintiff's Amended Complaint is any allegation that he circulated or included with the video any separate, personal statement about the video or the Black Lives Matter movement generally. Additionally,

7

the video was distributed only to fellow officers in a closed and private chat group, as opposed to a message shared more broadly with the public or press. *See Desrochers*, 572 F.3d at 709 (Where the subject matter of a statement is only marginally related to issues of public concern and was made "only to co-workers rather than to the press" a court may conclude that the statement does not substantially involve a matter of public concern."). Furthermore, there is no indication that Plaintiff was seeking to bring to light any wrongdoing or breach of public trust on the part of the government by sharing the video.

Plaintiff seems to argue that it is obvious that the video was critical of the Black Lives Matter movement and related protests, and therefore, it necessarily follows that his sharing of the video in the group text constituted speech involving a matter of "public concern" and was thus protected. However, nothing in Plaintiff's description of the video indicates that the video itself was clearly relevant to or critical of the ongoing Black Lives Matter protests. Furthermore, even if the video could be interpreted as commentary on the then widespread protests, not all speech that "merely touches on topics 'of public importance' necessarily addresses a matter of 'public concern' as that term is used in *Connick*." *Kokkinis v. Ivkovich*, 185 F.3d 840, 844 (7th Cir. 1999). Here, any message conveyed by Plaintiff's distribution of the video touched only lightly, if at all, on matters of public concern. Further, any message related to such matters "was incidental to the primary thrust of his post[ ]" which appears to have been nothing more than a "crass attempt at humor" as opposed to a message of advocacy or criticism of the protests, which undermines Plaintiff's assertion that it was speech on a matter of public concern. *Hernandez v. City of Phoenix*, 482 F. Supp. 3d 902, 915 (D. Ariz. 2020) (police officer's Facebook posts, which included cartoons about Muslims, were only marginally related to matters of public interest and contained no "indication of . . . advocacy" with respect to broader social issues and

8

thus did not constitute speech on matter of public concern). Accordingly, the Court concludes that neither the content, form, nor context of Plaintiff's speech supports his assertion that the speech addressed a matter of public concern, and the Court need not go on to perform the *Pickering* balancing test. *See Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (The court must first "determine[e] whether the employee spoke as a citizen on a matter of public concern. If the answer is no," the court need not conduct the balancing test as the employee has no First Amendment cause of action.).

Because Plaintiff has not plausibly alleged that he spoke on a matter of public concern when he sent the cartoon video clip to his co-workers, his Amended Complaint does not state a cognizable First Amendment retaliation claim. Furthermore, because Plaintiff has not met his burden to show that the facts alleged demonstrate a violation of his First Amendment rights, Defendants Struttmann and Batzel and entitled to qualified immunity on Plaintiff's claims. Additionally, because Plaintiff has failed adequately to allege an unconstitutional act by a municipal employee, he also fails to state a claim for municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). *See Webb v. City of Maplewood*, 889 F.3d 483, 487 (8th Cir. 2018) (there must be an unconstitutional act by a municipal employee before municipal liability under *Monell* may attach). Finally, and as discussed in the Court's prior order dismissing Plaintiff's initial complaint, the right to free speech under Article I, Section 8 of the Missouri Constitution tracks the corresponding rights under the First Amendment of the United States Constitution, *see Am. Fed'n of Teachers v. Ledbetter*, 387 S.W.3d 360, 364 (Mo. 2012), and therefore, his claim for retaliation in violation of his rights to freedom of speech under the Missouri Constitution fails for the same reason that his identical claim under the First Amendment of the United States Constitution fails.

9

### IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that, pursuant to Fed. R. Civ. P. 12(b)(6), Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. [30]) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Amended Complaint is **DISMISSED** with prejudice.

An accompanying order of dismissal will be entered as of this date.

Dated this 22nd day of November, 2021.

/s/Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE